## Commonwealth ex rel. Speaks *v.* Rundle, Appellant.

Argued September 12, 1966. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Alan J. Davis,* Assistant District Attorney, with him *William J. Stevens, Jr.,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for appellant.

*Jay S. Gottlieb,* for appellee.

OPINION BY WRIGHT, J., December 16, 1966:

This is an appeal by the Commonwealth from an order of Court of Common Pleas No. 10 of Philadelphia County, entered May 12, 1966, granting a petition for a writ of habeas corpus and directing that the petitioner, Heyward Speaks, be discharged. The order will be reversed.

On October 21, 1966, in the Court of Quarter Sessions of Philadelphia County at Nos. 938 to 988 October Sessions 1966, true bills were returned on fifty-one indictments charging Heyward Speaks with various criminal offenses. Twenty-two of these bills charged either rape or assault with intent to ravish and aggravated assault and battery, twenty-one charged burglary associated with the rapes and assaults, four charged aggravated robbery, one mayhem, one sodomy, one unlawful impersonation of an officer, and one carrying a concealed deadly weapon. Trial was delayed pending psychiatric diagnosis to determine whether Speaks was competent to confer with counsel for the preparation of his defense. On November 25, 1958, after trial nonjury before Judge WATERS, Speaks was found guilty on fifty of the bills.[1] Sentence was deferred "pending medical examination prior to sentencing under Barr-Walker Act". On March 2, 1959, a report of this examination was given to the court. On April 3, 1959, the trial judge sentenced Speaks to the Farview State

---

[1] On Bill No. 967, charging rape and assault, a demurrer was sustained because of the statute of limitations.

Hospital for a period of one day to life. This sentence was written on Bill No. 938, which charged assault with intent to ravish and aggravated assault and battery. On each of the other forty-nine bills, after the printed word "Sentence", the trial judge wrote the following: "See sentence on Bill No. 938 October 1955".

On February 16, 1962, in Court of Common Pleas No. 4 at No. 3706 December Term 1961, Speaks presented a petition for a writ of habeas corpus. On November 21, 1962, this petition was granted by Judge GLEESON on the ground that Speaks had been confined for a period of more than ninety days before the report of his psychiatric examination was presented to the court and sentences imposed.[2] Judge GLEESON ordered that Speaks be brought before Judge WATERS "for further proceedings". On May 17, 1963, treating Judge GLEESON'S order as a vacation of the prior sentences, Judge WATERS imposed consecutive terms of not less than five nor more than fifteen years upon Bills Nos. 940 and 970, each of which bills represented a conviction for rape. Sentence was then suspended on the other forty-eight bills, including Bill No. 938.

On December 13, 1965, in Court of Common Pleas No. 10 at No. 624 December Term 1965, Speaks filed

---

[2] Section 3(a) of the Act of January 8, 1952, P. L. (1951) 1851, 19 P.S. 1168, commonly known as the Barr-Walker Act, authorizes the court to postpone sentence and to impose temporary confinement, not exceeding ninety days, to afford the Department of Welfare time in which to make a psychiatric examination. Section 3(b) of the statute provides that unless such examination is made and a report thereon given to the court within the period of temporary confinement, the provisions of the Act shall not be available to the court. In *Commonwealth ex rel. Wherry v. Maroney*, 201 Pa. Superior Ct. 441, 193 A. 2d 839, we held that, if the report is timely made, additional confinement for a reasonable time until sentence can be pronounced does not affect the court's power to invoke the provisions of the statute. However, in the instant case involving Speaks the report was not timely made.

the petition with which we are presently concerned. He alleged illegal confinement on the ground that the court below had no authority, on May 17, 1963, to impose sentences on Bills Nos. 940 and 970 because, on April 3, 1959, sentence on these bills had been suspended. Judge JAMIESON concluded "with great reluctance" that sentence had originally been suspended by Judge WATERS on Bills Nos. 940 and 970, and therefore granted the petition on the authority of *Commonwealth v. Duff*, 414 Pa. 471, 200 A. 2d 773, reversing *Commonwealth v. Duff*, 201 Pa. Superior Ct. 387, 192 A. 2d 258, in which three members of the Superior Court, including the writer, had dissented. The *Duff* case stands for the proposition that a trial judge does not have the power to indefinitely suspend sentence.

It is our view that the lower court erred in finding that Judge WATERS, on April 3, 1959, suspended sentence on all bills of indictment except Bill No. 938. A sentence, as any other judgment, is construed in its entirety according to the usual canons of construction, and so as to give effect to the intent of the sentencing court: *Commonwealth ex rel. Scoleri v. Burke*, 171 Pa. Superior Ct. 285, 90 A. 2d 847. With this well established principle in mind, we examine the words "See sentence on Bill No. 938", placed by the trial judge on each of the other forty-nine bills of indictment immediately following the printed word "Sentence". Given their ordinary meaning, these words import that the trial judge intended to have the sentence written on Bill No. 938 apply to all the bills. There is not one word in the record at that time to indicate that the court suspended sentence on the other forty-nine bills of indictment. The effect of his language was to incorporate by reference the sentence which had been imposed on Bill No. 938.

Our conclusion that the trial judge did not suspend sentence is supported by a comparison of the philoso-

phy of the Barr-Walker Act with that of the applicable statute under which Speaks could have been granted suspended sentences for the sex crimes involved. Section 1 of the Barr-Walker Act (19 P.S. 1166) expresses a legislative purpose to provide more efficient punishment, treatment, and rehabilitation of persons convicted of sex crimes "if the court is of the opinion that any such person, if at large, constitutes a threat of bodily harm to members of the public, or is an habitual offender and mentally ill". The contrasting language of the statute authorizing suspension of sentence and probation requires a trial judge to entertain the opposite belief, namely, that the person convicted is not likely to commit crime again or be a threat to the public.[3] It is unlikely that a trial judge would determine that the public good required a Barr-Walker sentence for one of twenty-one vicious sexual assaults but required no detention for the other twenty. We are firmly of the opinion that the instant appeal is not controlled by the *Duff* case, supra, upon which the lower court placed reliance.

In summary, the sentences imposed by Judge WATERS on April 3, 1959, were vacated by Judge GLEESON on November 21, 1962, by virtue of the first habeas corpus petition filed by Speaks. This in no way imports

---

[3] Section 25 of the Act of August 6, 1941, P. L. 861, 61 P.S. 331.25, reads as follows (italics supplied) : "Whenever any person shall be found guilty of any criminal offense by verdict of a jury, plea, or otherwise, except murder in the first degree, in any court of this Commonwealth, the court shall have the power, in its discretion, if it believes the character of the person and the circumstances of the case to be such that *he is not likely again to engage in a course of criminal conduct and that the public good does not demand or require the imposition of a sentence to imprisonment,* instead of imposing such sentence, to place the person on probation for such definite period as the court shall direct, not exceeding the maximum period of imprisonment allowed by law for the offense for which such sentence might be imposed".

that Speaks was immune from punishment. The vacated sentences were subject to correction, and valid sentences could thereafter be imposed notwithstanding the expiration of the term: *Commonwealth ex rel. Perrotta v. Myers*, 203 Pa. Superior Ct. 287, 201 A. 2d 292; *Commonwealth ex rel. Lepera v. Rundle*, 205 Pa. Superior Ct. 251, 208 A. 2d 874. Speaks was indeed fortunate in that he was sentenced on only two of the bills.

The order of the court below is reversed, and the judgments of sentence entered May 17, 1963 are affirmed.

———

CONCURRING AND DISSENTING OPINION BY JACOBS, J.:

I agree with the majority that the lower court did not suspend sentence on the remaining forty-nine indictments when it sentenced the relator under the Barr-Walker Act on April 3, 1955. However, I am of the opinion that the judge in resentencing on May 17, 1963 exceeded his powers when he imposed two consecutive sentences of not less than five nor more than fifteen years on Bills Nos. 940 and 970.

The Barr-Walker sentence of from one day to life is a single sentence and, in my view, the judge in writing "See Sentence on Bill No. 938 Oct. 1955" on each of the other forty-nine indictments imposed a general or consolidated sentence on all the indictments. Section 1 of the Barr-Walker Act authorizes the imposition of a life sentence *"in lieu of the sentence now provided by law, for each such crime"* and Section 5(a) speaks of sentencing *"a person convicted of any one or more of the crimes enumerated in section one."* Act of January 8, 1952, P. L. (1951) 1851, 19 P.S. §§1166, 1170 (emphasis added). It seems to me this contemplates a single Barr-Walker sentence covering all the indictments, which would be termed a general

or consolidated sentence. Such a sentence is proper if it does not exceed the maximum which could be imposed on any one indictment. *Commonwealth v. Krzesniak,* 180 Pa. Superior Ct. 560, 119 A. 2d 617 (1956) ; *Commonwealth v. Waychoff,* 177 Pa. Superior Ct. 182, 110 A. 2d 780 (1955).

The Barr-Walker sentence having been declared illegal, the court, inasmuch as it had the power to impose some punishment, could correct the sentence after the expiration of the term at which the original sentence was imposed. *Halderman's Petition,* 276 Pa. 1, 119 A. 735 (1923) ; *Commonwealth ex rel. Perrotta v. Myers,* 203 Pa. Superior Ct. 287, 201 A. 2d 292 (1964). In imposing the original Barr-Walker sentence the judge did not elect to impose consecutive sentences, and to allow him now to resentence using the consecutive method would, in many instances, sanction an increase in the imprisonment originally imposed. *See Halderman's Petition,* supra; *Commonwealth v. Harrison,* 142 Pa. Superior Ct. 453, 16 A. 2d 665 (1940). The Supreme Court said in *Halderman*: "The difficulty in the present case arises from the failure of the court to expressly direct that the punishment be cumulative. In the absence of such order, the sentences run concurrently. . . . The term having expired, the court below could not alter its order by directing that the imprisonment be cumulative, since this would result in an increase of the time of incarceration. . . ." 276 Pa. 4. Although both *Halderman's Petition,* supra, and *Commonwealth v. Harrison,* supra, involved "lumping sentences", they are similar to the present case in that the sentences were held illegal, and the original sentence made no provision for cumulative or consecutive sentencing, and I believe they are controlling by analogy.

The implication of the majority opinion is that once a sentence is declared illegal and set aside a judge,

in resentencing after the term, can impose any punishment supported by the convictions.[1] In my opinion this is not the law of Pennsylvania nor is it fair to place such a risk on a defendant who seeks correction of an illegal sentence.[2] Correction of a sentence is a narrow exception to the rule that a court cannot change its judgment after term time. To later allow a judge to increase the sentence would allow him to reconsider the merits of the defendant's case, something the law opposes. Cf. *Commonwealth v. Mayloy*, 57 Pa. 291 (1868). This situation must be distinguished from the grant of a new trial where all the merits of the case are reviewed including the innocence or guilt of the defendant.

On appeal or in a habeas corpus proceeding this court may amend or mold a sentence so that it conforms with the law, or remand the defendant to the court below for resentence. *Commonwealth ex rel. Rouzer v. Claudy*, 178 Pa. Superior Ct. 106, 113 A. 2d 321 (1955).

I would amend the sentence imposed on May 17, 1963 to No. 970 October Sessions, 1955 of the Court of Oyer and Terminer and Quarter Sessions, of Philadelphia County, to provide that the same shall be served concurrently with sentence imposed on the same day to No. 940 October Sessions, 1955 in the same court. As amended, relator's maximum sentence which runs from October 7, 1955 would be fifteen years, and the same not having been served, the grant of the writ of habeas corpus was properly reversed.

SPAULDING, J., joins in this opinion.

---

[1] The majority notes that Speaks "was indeed fortunate in that he was sentenced on only two of the bills."

[2] Speaks could have been sentenced to a maximum in excess of 500 years if he received consecutive sentences on all indictments.

Dissenting Opinion by Hoffman, J.:

I would affirm on the opinion of Judge Jamieson in the court below. The custom in the courts of Philadelphia, for many years prior to *Commonwealth v. Duff,* 414 Pa. 471, 200 A. 2d 773 (1964), was to sentence on specified bills and to suspend sentence on the remainder. That is clearly what happened here. The sentencing judge's comment, when the case was before him for the second time, reinforces this conclusion. Judge Waters stated: "Lest he [Judge Gleeson] vacate the *suspended* sentence on the other Bills, we can mark them all suspended." (emphasis supplied).

I reach the conclusion that the writ should issue as reluctantly and unhappily as did Judge Jamieson. However, in the event of Speaks' release, I think there is sufficient indication of his mental instability in this record to justify the filing of a petition, by the proper authorities, for his possible commitment under The Mental Health Act.