**UNITED STATES of America ex rel. Heyward SPEAKS**

v.

**Joseph R. BRIERLEY, Superintendent.**

**Misc. No. 3913.**

United States District Court

E. D. Pennsylvania.

Nov. 19, 1968.

E. Barclay Cale, Jr., Morgan, Lewis & Bockius, Philadelphia, Pa., for relator.

Samuel T. Swansen, Asst. Dist. Atty., Philadelphia, Pa., for respondent.

## OPINION

LUONGO, District Judge.

In this petition for writ of habeas corpus, relator, Heyward Speaks, charges that his constitutional rights were violated by the courts of the Commonwealth of Pennsylvania in that they denied him due process of law and the equal protection of the laws of Pennsylvania.

Speaks was indicted on 51 bills in the Court of Quarter Sessions of Philadelphia County, October Session, 1955, Nos. 938 through 988. Twenty-two of the bills charged rape or assault with intent to ravish and aggravated assault and battery; 21 charged burglary; four, aggravated robbery; and one each, sodomy, mayhem, carrying a concealed deadly weapon, and unlawful impersonation of an officer. Following indictment, Speaks was found to be incompetent to stand trial and was committed to an institution for the criminally insane until recovered sufficiently to stand trial. On November 25, 1958 he was brought to trial and was found guilty on 50 of the bills.[1] On April 3, 1959 Speaks was sentenced under the Barr-Walker Act, 19 P.S. § 1166 et seq., to imprisonment for one day to life. On Bill 938, following

the printed word "Sentence," the clerk recorded the following:

"And Now April 3rd 1959

The Defendant 'Heyward Speaks' is hereby Committed under the 'Barr-Walker' Act for a period of from One (1) Day to Life and it is Ordered that the Defendant be sent to The Penna. State Hospital At 'Farview.'

See Letter attached.

By the Court"[2]

On the remaining 49 bills, following the printed word "Sentence," the Clerk of Court entered the notation:

"See Sentence on Bill #938 Oct. 1955 No costs.

By the Court"

The sentencing judge signed each of the 50 bills immediately below the words recorded by the clerk.

In 1962 Speaks filed a habeas corpus petition in the state court charging that he had been improperly sentenced under the Barr-Walker Act because of failure to follow the procedure set forth therein. That petition was granted November 21, 1962 and Speaks was ordered returned to the sentencing judge for further proceedings. On May 17, 1963 the sentencing judge, interpreting the state habeas court's order as having vacated the sentence on Bill 938, imposed consecutive 5 to 15 year prison sentences on Bills 940 and 970 effective from October 7, 1955, the date Speaks was originally taken into custody.

In December 1965 Speaks again petitioned the state court for a writ of habeas corpus, charging that he was illegally confined because the court lacked power in 1963 to impose sentence on Bills 940 and 970. He contended that sentence had not been imposed, and

1. A demurrer was sustained on Bill 967 because of the running of the Statute of Limitations.

2. The sentence was later amended to read:

"And now this 31st day of May 1962 the judgment of Sentence entered in the above entitled case on April 3rd 1959 is hereby corrected to read: the defendant Heyward Speaks is hereby Sentenced under the 'Barr-Walker' Act for a period of from One (1) day to Life at the Farview State Hospital, at Waymart, Pennsylvania. See Letter attached.

By the Court"

therefore had been suspended on those bills, along with all the others, when the Barr-Walker sentence was imposed on Bill 938 in 1959, and that the court lost the power to sentence after the term of court had passed, citing Commonwealth v. Duff, 414 Pa. 471, 200 A.2d 773 (1964). In the answer to that petition, the Commonwealth did not deny that no sentence had been imposed on 940 and 970 in 1959; it asserted that the only sentences imposed on those bills were the ones imposed on May 17, 1963. In open court the Commonwealth stated, with reference to the 1959 sentencing, that it had no doubt that it "was the court's intention to suspend sentence on all bills except the one imposed."

The state habeas judge (Jamieson, J.) accepted the Commonwealth's statement and concluded that sentence had been suspended on the 49 bills in 1959. Since no definite period of probation had been set when the sentences were suspended, and since the term of court had long since passed, Judge Jamieson concluded that under Commonwealth v. Duff, supra, the sentencing court lacked power in 1963 to sentence on Bills 940 and 970 and he granted the writ. The Commonwealth appealed, and on appeal argued, contrary to the position taken before the habeas court, that the sentencing court had not suspended sentence on Bills 940 and 970. The Superior Court of Pennsylvania examined the notations on the 49 bills of indictment immediately following the printed word "Sentence" and concluded that

"Given their ordinary meaning, these words import that the trial judge intended to have the sentence written on Bill No. 938 apply to all the bills. There is not one word in the record at that time to indicate that the court suspended sentence on the other forty-nine bills of indictment. The effect of his language was to incorporate by reference the sentence which had been imposed on Bill No. 938." Common-

wealth ex rel. Speaks v. Rundle, 209 Pa. 227, 231, 224 A.2d 805, 807 (1966). The Superior Court accordingly reversed the grant of the writ and affirmed the judgments of sentence. The Supreme Court of Pennsylvania thereafter denied relator's petition for allowance of appeal from the Superior Court's ruling.[3] Relator has, therefore exhausted state remedies and the matter is properly before this court for consideration of the constitutional issues.

Speaks contends that no sentences were imposed on Bills 940 and 970 at the time of the original sentencing in April 1959; that sentences were not imposed on those bills until May 17, 1963; that under Pennsylvania law, the court lost the power to sentence him on those bills after the expiration of the term of court in which the sentence was suspended, 19 P.S. § 1051; 61 P.S. § 331.-25; Commonwealth v. Duff, supra; that the failure of the Pennsylvania courts to apply that law to his case denied him the equal protection of the laws of Pennsylvania; and that the failure of the courts of Pennsylvania to accord him a hearing on his contention that no sentences had been imposed on those bills in April 1959 constituted a denial of due process of law.

In the answer to the petition in this court, the Commonwealth described the dispute as one not involving legal questions, but one which involved simply the weight to be accorded a determination of fact made by the state courts. At that point the Commonwealth contended that relator had received a full and fair hearing in the state courts, which had resolved the factual issue against him, and that this court should not grant a hearing, citing Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). When this court ordered an evidentiary hearing, however, the Commonwealth did an aboutface, as it had done in the state courts. It abandoned its initial reliance upon the alleged factual inquiry by the state courts, and

3.  No. 168A Misc. Docket No. 15 (No. 501, October Term, 1966).

urged instead that the state courts had decided the issue as a matter of law.

The reason for the Commonwealth's change of direction became quite apparent at the hearing. Relator presented evidence that since at least 1952 it has been the practice in the Courts of Quarter Sessions of Philadelphia, when sentences have been imposed on some, and suspended on others, of multiple bills of indictment, to write the sentence in full on the bill or bills on which sentence was imposed and to note, on the other bills on which sentence had been suspended "See sentence on Bill No. _____" (inserting the number of the bill or bills on which sentence had been imposed). The Commonwealth made no effort to controvert that testimony, either by cross-examination or by evidence of its own. Instead it took the position and rested its case entirely upon the contention that the Superior Court had interpreted the notation on the 49 bills as a matter of law, that this was purely a matter of state law and the Superior Court's ruling is binding on this court.

The cases[4] cited by the Commonwealth as authority for the proposition that this involves purely a question of state law are wholly inapposite. Those cases hold that where there is a conflict between an oral pronouncement and the clear terms of a written sentence, the written sentence controls. The question in the instant case is whether the words "See Sentence on Bill 938" is a sentence at all, and if so, if the meaning of the words is sufficiently clear to permit interpretation as a matter of law, or whether the attempt to do so under the circumstances here present offends due process.

The Superior Court ruled that, "[g]iven their ordinary meaning" those words clearly showed the trial judge's intent to have the sentence on 938 applied to all bills, that he intended to incorporate that sentence by reference. That this meaning is not at all clear is quite evident from an examination of the record which was before the Superior Court. The very bills of indictment on which these notations were recorded refute the Superior Court's interpretation and reveal the patent ambiguity of the phrase. That Court concluded that the trial judge intended to impose concurrent one day to life Barr-Walker sentences on all 50 bills, but the Barr-Walker Act applies only to specifically enumerated sex crimes[5] and more than one-half of these bills charge the non-sex crimes of burglary, robbery, carrying concealed deadly weapon, and impersonating an officer to which the Barr-Walker sentence is inapplicable.

It ignores reality to assume (as the Superior Court's conclusion requires) that the experienced trial judge intended to impose Barr-Walker sentences, carrying a maximum of life imprisonment, for misdemeanors such as carrying a concealed deadly weapon (maximum sen-

4. Commonwealth v. Zelnick, 202 Pa.Super. 129, 195 A.2d 171 (1963), cert. denied, 377 U.S. 1006, 84 S.Ct. 1943, 12 L.Ed.2d 1054 (1964).

Commonwealth ex rel. Middleton v. Banmiller, 195 Pa.Super. 45, 169 A.2d 343 (1961).

Commonwealth ex rel. Nagle v. Myers, 191 Pa.Super. 495, 159 A.2d 261 (1960).

Commonwealth ex rel. Gilson v. Keenan, 185 Pa.Super. 49, 13 A.2d 259, cert. denied, 357 U.S. 910, 78 S.Ct. 1157, 2 L. Ed.2d 1160 (1958).

5. 19 P.S.
"§ 1166. Indeterminate sentence for certain sex offenses

For the better administration of justice and the more efficient punishment, treatment and rehabilitation of persons convicted of the crime of indecent assault, incest, assault with intent to commit sodomy, solicitation to commit sodomy, sodomy, assault with intent to ravish or rape, if the court is of the opinion that any such person, if at large, constitutes a threat of bodily harm to members of the public, or is an habitual offender and mentally ill, the court, in lieu of the sentence now provided by law, for each such crime, may sentence such person to a State institution for an indeterminate term having a minimum of one day and a maximum of his natural life."

tence one year, 18 P.S. § 4416) and impersonating an officer (maximum sentence one year, 18 P.S. § 4319), or even for the felony charges of burglary and aggravated robbery which carry maximum sentences, respectively, of 20 and 10 years (18 P.S. §§ 4901, 4705). There is evidence quite to the contrary in the colloquy between the court and counsel after the consecutive 5 to 15 year sentences had been imposed on Bills 940 and 970:

"MR. POLLOCK: I take it, Sir, sentence on all other bills is suspended?

THE COURT: Yes. *They are suspended as of the last time.*

MR. POLLOCK: I think that is all right, because what Judge Gleason did was to vacate in effect the sentence imposed under the Barr-Walker Act.

THE COURT: Yes.

MR. POLLOCK: Very good.

THE COURT: Lest he vacated *the suspended sentence* on the other bills, we can mark them all suspended."

(Emphasis supplied.) (P. 24 N.T. Sentencing Proceedings May 17 1963.)

■■ In the context in which they were used by the sentencing judge, the words "See Sentence on Bill 938" are, at best, ambiguous. In light of that ambiguity, due process required inquiry into what the sentencing judge intended when he signed the bills containing those notations, but Speaks was never given the opportunity to present evidence on that crucial issue. As before noted, when the matter was before Judge Jamieson, the Commonwealth conceded that sentences had not been imposed on the 49 bills in 1959. Speaks was not present at that proceeding, nor was he represented by counsel, but even if he had been present, with counsel, he would not have had the opportunity to present evidence bearing on the sentencing judge's intent because that issue had been eliminated by the Commonwealth's concession. Thus, at no point was there presented, and the state court at no time

had before it, evidence as to custom and practice; as to whether the words had an accepted meaning; as to the circumstances under which court clerks made such entries; or the circumstances under which sentencing judges signed them. The failure of the state court to conduct a hearing on that issue denied Speaks due process of law. The state record is completely silent on a crucial matter, and is therefore "seriously inadequate for the ascertainment of the truth." Under such circumstances it is this court's duty to disregard the state court's finding and inquire into the matter. Townsend v. Sain, 373 U.S. 293, 316, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

The evidentiary hearing before me discloses what the meaning of the phrase is and it is not what the Superior Court held it to be. Relator produced uncontroverted, credible evidence that the notation has been used for years in the Courts of Quarter Sessions in Philadelphia to indicate that sentence was suspended on the bill on which entered; that the reference to the other bill on which sentence had been imposed is for information purposes; that sentences are always set forth in full on the bill on which imposed, and that a sentence on one bill is never incorporated by reference in another bill. This testimony is corroborated by relator's Exhibits P–4A, B and C. These were lists of cases scheduled for Courtroom 453 on May 17, 1963. The lists were used by the Commonwealth and perhaps even prepared by it. These bills were listed thereon with the notation that sentence had been suspended.

■■■ When all the evidence is considered in conjunction with the trial judge's own comments (in the colloquy hereinabove noted) as to what he had done, the evidence is overwhelming that the trial judge intended to, and did, suspend sentence on the 49 other bills when he sentenced Speaks to one day to life under the Barr-Walker Act on Bill 938 in 1959. Under Pennsylvania law (Commonwealth v. Duff, supra;

Commonwealth v. Hoffman, 210 Pa. Super. 48, 232 A.2d 19 (1967)) sentences could not be imposed on those bills in 1963. The refusal of the Pennsylvania courts to apply that law to Speaks denied him the equal protection of the laws of Pennsylvania in violation of the Equal Protection Clause of the Fourteenth Amendment. Cf. U. S. ex rel. Reis v. Leppig, 256 F.Supp. 881 (S.D.Fla.1966), aff'd on other grounds sub nom, Buchanan v. U. S. ex rel. Reis, 379 F.2d 612 (5th Cir. 1967). Speaks was singled out for treatment different than that which has been generally applied (since at least 1952) to persons in similar circumstances. In that respect his case differs from Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed. 422 (1947) on which the Commonwealth relies so heavily. There the court stressed that "[w]e have no right to assume that Louisiana singled out Francis for a treatment other than that which *has been* or *would generally be* applied." (Emphasis supplied.) Speaks has established to my satisfaction that the treatment generally applied, at the time these "sentences" were imposed, was that those as to whom similar "sentences" were imposed were regarded as having had no sentence imposed, whereas Speaks was treated as if he had in fact received sentences concurrent with those imposed and recorded on some other bill.

Equally, respondent can draw little comfort from U. S. ex rel. Almeida v. Rundle, 383 F.2d 421 (3d Cir. 1967). There the argument was made that *subsequent* to Almeida's trial, the law of felony murder was changed somewhat in Commonwealth v. Redline, 391 Pa. 486, 137 A.2d 472 (1958) and that because of that change Almeida alone stood convicted of murder in the circumstances presented by his case. In rejecting the equal protection of the law argument the court stated, 383 F.2d at page 427:

"The argument might deserve more attention if Almeida's circumstances came after Redline. The short answer is that Pennsylvania did not apply to Almeida a rule which it would not have applied to others in similar circumstances, and the subsequent Redline decision does not, however it is interpreted, make out a case as to which 'equal protection' becomes involved."

The decision in Speaks' case, on the other hand, did change the practice which had existed theretofore and did result in the application of a rule to him which the Commonwealth did not apply to others in similar circumstances. Speaks was thus denied the equal protection of the laws of Pennsylvania.

The writ of habeas corpus will be granted, but its execution will be stayed for thirty (30) days to enable the Commonwealth to appeal.

The Court acknowledges with grateful appreciation the outstanding service rendered by E. Barclay Cale, Esquire, who has represented relator at the request of the Court and without compensation.