Commonwealth *v.* Hosendorf, Appellant.

Submitted March 17, 1969. Before WRIGHT, P. J.,
WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING,
and CERCONE, JJ.

526

*John F. X. Fenerty,* and *Bartolomeo, Baratta & Fenerty,* for appellant.

*James D. Crawford,* Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, June 12, 1969:
Order affirmed.

DISSENTING OPINION BY HOFFMAN, J.:
This case is a proceeding under the Post Conviction Hearing Act, Act of January 25, 1966, P. L. (1965) 1580, §1 et seq., 19 P.S. 1180-1 through 1180-14. Appellant maintains that he is improperly imprisoned because the maximum sentence imposed by the trial judge has already expired.

At the conclusion of his trial the court stated:
"Well, this is a grave question.

"*I will sentence him to five to twenty years* in the Eastern Penitentiary. Have him sent to the Diagnostic Clinic and they will give him help and treatment out there. They are well equipped to do that. If at the end of five years the evidence indicates that he is all right and no longer a menace, of course an application for parole can be made. But the extent of these crimes is so great that we have to have him at least

under supervision for a long period of time. That is the best disposition I can think of.

"*Five to ten years* in the Eastern Penitentiary, and to be sent to the Diagnostic Clinic." (Emphasis added).

The Bill of Indictment from appellant's trial bears an endorsement prepared in a clerk's handwriting stating that the sentence is for five to twenty years. This was signed by the judge.

Appellant's position is that his maximum sentence is ten years. The Commonwealth, on the other hand, maintains that the maximum sentence is twenty years. This matter, unfortunately, cannot be resolved by referral to the trial judge, however, since he is now deceased.

The post-conviction hearing court, when confronted with the dilemma initially stated: "On the last page, the Trial Judge, thinking out loud, said he thought he would sentence the defendant to five to twenty years, but at the conclusion of the Notes of Testimony he says, 'Five to ten years in the Eastern State Penitentiary and defendant to be sent to a Diagnostic Clinic. . . .' It would seem to me there is substantial support for the contention that the intended sentence was five to ten years.

"So I have before me the original Bill upon which there is the usual stamp and the Clerk filled in five to twenty years. . . . It would seem to me there is substantial support for the contention that the intended sentence was five to ten years. . . . I would be inclined to say, in justice to the defendant, the last thing that the Trial Judge said—why he said it, whether he changed his mind or not between his thinking as indicated on the immediately preceding page, nobody can hazard a guess—but I would think I would have to be bound by the five to ten years."

Nonetheless, the court below found that the endorsement on the bill of indictment of five to twenty

years, prepared in a clerk's hand controls. "I am bound by the sentence as recorded on the Bill of Indictment, and for this reason I dismiss the Petition."

The court believed that this conclusion was required by our holdings in *Commonwealth ex rel. Spader v. Myers*, 187 Pa. Superior Ct. 654, 145 A. 2d 870 (1958), and *Commonwealth ex rel. Middleton v. Banmiller*, 195 Pa. Superior Ct. 45, 169 A. 2d 343 (1961). In *Spader* we stated "The separate consecutive sentences endorsed on the bills of indictment, signed by the sentencing judge, and so entered in the records of the court, constitute the sentences imposed in these cases. The oral statements made by the judge, but not incorporated in the written judgment signed by him, are no part of the judgment of sentence." At 658-659. Similarly, in *Middleton,* we noted "The pronounced sentence as recorded on the indictments always controls." At 47.

Both cases which arose on writs of habeas corpus are, however, inapposite to this present action as they rely on and cite as their controlling authority *Commonwealth ex rel. Scoleri v. Burke,* 171 Pa. Superior Ct. 285, 90 A. 2d 847 (1952), which likewise pertained to a writ of habeas corpus. In *Scoleri* this court stated: "In Hill v. United States ex rel. Wampler, 298 U.S. 460 . . . , the Supreme Court of the United States, in an opinion by Mr. Justice CARDOZO, said: 'Two of the questions certified to us, the first question and the third, make mention of a variance between the commitment and the sentence "orally pronounced." If that were the only variance, we should deem it unimportant. The only sentence known to the law is the sentence or judgment entered upon the records of the court [citing cases]. *If the entry is inaccurate, there is a remedy by motion to correct it to the end that it may speak the truth.* People ex rel. Trainor v. Baker, 89 N.Y. 460, 466. But the judgment imports verity when col-

laterally assailed. Ibid. *Until corrected in a direct proceeding,* it says what it was meant to say, and this by an irrebutable presumption. In any collateral inquiry, a court will close its ears to a suggestion that the sentence entered in the minutes is something other than the authentic expression of the sentence of the judge'." (Emphasis added.)

Similarly, in *Middleton,* Judge MONTGOMERY writing for our court stated "It has been repeatedly held by this Court that an alleged inconsistency between sentence as written and as orally pronounced may not be collaterally questioned in a habeas corpus proceeding." At 47-48. *Spader* merely cites *Scoleri* as authority for the above proposition.

In summary, the above cases contemplate that a variance between the "sentence as written and as orally pronounced" may be questioned. This issue, however, cannot be raised by a writ of habeas corpus. Rather, it must be brought through an appropriate "direct proceeding." Only then may the sentence as orally pronounced be found to be controlling. This apparently occurred in *Commonwealth ex rel. Malone v. Wright,* 126 Pa. 464, 17 A. 620 (1889), where the reviewing court was faced with a clear conflict between the bill of indictment and the intended meaning of the sentencing judge. The Supreme Court stated "It is very evident there was a clerical error in recording the sentence on bill No. 15. . . . At most, it was a mere slip or misprision of the clerk of the court below in recording the sentence." At 466. Thus clerical endorsements were subordinated to the trial court's pronouncement of sentence.

In the instant case, petitioner has attacked the discrepancy between the sentence recorded on the bill of indictment and the sentence found to have been orally pronounced by the trial court by means of bringing a Petition under the Post Conviction Hearing Act. The

Act, provides that it "establishes a post-conviction procedure for providing relief from convictions obtained and *sentences imposed without due process of law.* The procedure hereby established shall encompass all common law and statutory procedures for the same purpose that exists when the statute takes effect, including habeas corpus and coram nobis." Sec. 2.

Apparently, this section is designed to afford a comprehensive avenue of relief. Technical rules of pleading implicitly are liberalized and all matters pertaining to a petitioner's ultimate relief may be raised. Thus appellant may question, as he could not in *Scoleri,* whether the sentence noted on the endorsement of the bill of indictment was, in the light of the trial transcript, that intended by the sentencing judge.

On the facts in this case, it is, of course, impossible to state with reasonable certainty what sentence the trial judge intended. The Post Conviction Hearing Court evidently considered that five to ten years instead of five to twenty years was contemplated. I imagine, however, that just as strong an argument could be made the other way. Nonetheless, when we are faced with an ambiguity, I feel that we must be guided by Justice FRANKFURTER'S statement for the Court in *Bell v. United States,* 349 U.S. 81, 83 (1955) that it is "a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment." Although the grounds for this statement are not articulated, Judge FRIENDLY has thought it rests on "the instinctive distaste against men languishing in prison unless the law maker has clearly said they should." Mendelson ed., Felix Frankfurter: The Judge, at 43 (1964).

Accordingly, as appellant has already served ten years imprisonment, I would order his discharge.

SPAULDING, J., joins in this dissenting opinion.